IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> KENNETH A. BEALL and DEBORAH D. BEALL, <br><br> *Defendants*. | CIVIL ACTION NO. <br> **3:23-cv-00060-TES** |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, The Ohio Casualty Insurance Company, brought this action seeking

indemnification from Defendants Kenneth A. Beall and Deborah D. Beall under an

Indemnity Agreement. *See* [Doc. 1]. Having completed discovery, Plaintiff now moves

for summary judgment. [Doc. 24]. For the reasons explained in further detail below, the

Court **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 17].

## BACKGROUND[1]

First, because Defendants do not properly dispute any of Plaintiff's alleged facts,

Plaintiff's Statement of Material Facts is deemed admitted. *See* [Doc. 24-2]; LR 56,

MDGa. Plaintiff complied with Local Rule 56 and attached to its Motion "a separate and

---

[1] In considering this Motion for Summary Judgment, the Court must believe the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

concise statement of the material facts to which [it] contends there is no genuine dispute to be tried." In their Response, Defendants purport to deny several of Plaintiff's statements, but their purported denials are deficient under Local Rule 56. *See* [Doc. 29-1]. A party opposing summary judgment must respond to each of the material facts contained in the movant's statement, and "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record" are "deemed to have been admitted, unless otherwise appropriate." LR 56, MDGa; *see Gordon v. Bibb Cnty. Sch. Dist.*, No. 22-13286, 2023 WL 8253881, at *2 (11th Cir. Nov. 29, 2023) (holding that the district court did not abuse its discretion under Local Rule 56 in finding most of the movant's statement of material facts undisputed where the nonmovant's response failed to cite specific evidence in her response). Defendants deny several of Plaintiff's statements without "specifically controvert[ing]" them by citing to the record. *Id.; see* [Doc. 29-1, ¶¶ 3–4, 10, 12–14, 34–36]. Thus, Defendants do not properly deny any part of Plaintiff's Statement of Material Facts.

Defendants also claim to "lack knowledge or information to either admit or deny" some of Plaintiff's statements. *See* [Doc. 29-1]. Local Rule 56 prohibits a respondent from "assert[ing] insufficient knowledge to admit or deny a material fact asserted by the movant" unless it has complied with Federal Rule of Civil Procedure 56(d)—*i.e.*, it has "show[n] by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition." Defendants state that they "lack knowledge or information to either admit or deny" several of Plaintiff's statements without "show[ing] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." LR 56, MDGa; Fed. R. Civ. P. 56(d); *see* [Doc. 29-1, ¶¶ 22, 24, 26–31]. Because no part of Plaintiff's Statement of Material Facts is properly denied, it is deemed admitted in its entirety. *See* [Doc. 24-2]; LR 56, MDGa.

However, this does not relieve the Court of its responsibility to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008). Having reviewed the record in the light most favorable to Defendants, the Court finds the facts to be as follows.

### A.    <u>Factual Background</u>

In 2005, Oconee Parkside Development Partners, a Georgia limited liability company, began developing a subdivision[2] in Oconee County, Georgia. [Doc. 24-3, Olson Decl., ¶ 4]. Defendant Kenneth Beall was a 10% member of Oconee Parkside, but Defendant Deborah Beall was not a member at all. [Doc. 27, K. Beall Depo., p. 29:14]; [Doc. 26, D. Beall Depo., p. 6:15].

In connection with the subdivision-development project, Oconee Parkside sought and received bonds from Developers Surety and Indemnity Company, Plaintiff's

---

[2] The subdivision was known as Westland Subdivision, Phase One. [Doc. 24-3, Olson Decl., ¶ 4].

predecessor in interest. [Doc. 24-3, Olson Decl., ¶ 5]. Developers Surety issued four

bonds, including a sanitary sewer installation bond with a penal sum of $400,000.00. [*Id.*

at ¶ 8]; *see* [Doc. 24-3, Bonds, pp. 16–24]. Under the terms of that bond, Oconee Parkside

agreed to "construct sanitary sewer pumpstations for [the subdivision] . . . in

accordance with plans and specifications . . . submitted to the Oconee Utility

department . . . no later than June 30, 2007." [Doc. 24-3, Bonds, p. 21]. In return, Oconee

County agreed that if Oconee Parkside "perform[ed] and fulfill[ed] all the

undertakings, covenants, provisions, terms and conditions of Oconee County Zoning

Ordinances and Subdivision Regulations," then the bond would be void. [*Id.*].

    In exchange for those bonds, Defendants and other indemnitors[3] executed an

Indemnity Agreement on April 25, 2005, in favor of Developers Surety.[4] [Doc. 24-3,

Olson Decl., ¶ 7]; [Doc. 24-3, Indemnity Agreement, ¶ 1]. Defendants agreed to

"indemnify and hold harmless Surety from and against any and all liability, loss,

---

[3] On its face, the Indemnity Agreement appears to have been executed by Oconee Parkside Development Partners LLC, as the principal, and the following individuals as indemnitors: George F. Chandler, Karen Chandler, Steven M. Hornyak, Jolie Hornyak, Melinda K. Chandler, Kenneth A. Beall, Deborah D. Beall, Brian P. McGowen, and Chris McGowen. [Doc. 24-3, Indemnity Agreement, p. 14].

[4] Defendants do not deny signing the Indemnity Agreement. Instead, they only claim that they don't remember signing it. [Doc. 27, K. Beall Depo., 53:11]; [Doc. 26, D. Beall Depo., 18:9-10]. Their lack of memory, without more, "does not directly controvert . . . evidence or the corresponding inference in favor of the agreement." *Reddick v. Hewlett-Packard Co.*, No. 1:20-cv-04597-LMM-RDC, 2021 WL 5034839 (N.D. Ga. 2021); *see also Nelson v. State Farm Life Ins. Co.*, 344 S.E.2d 492, 495 (Ga. Ct. App. 1986) (holding that a beneficiary's "equivocal circumstantial evidence" regarding a signature's authenticity did not create a genuine issue of material fact as to the validity of an insurance policy form). Kenneth Beall acknowledges that his signature on the Indemnity Agreement looks "similar" to his signature, and Deborah Beall testified that her signature on the Indemnity Agreement "could be" hers. [Doc. 27, K. Beall Depo., 53:11]; [Doc. 26, D. Beall Depo., 18:9-10].

claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the maximum rate allowed by law, which Surety may sustain or incur by reason of or in consequence of the execution and delivery by surety of any Bond on behalf of" Oconee Parkside. [Doc. 24-3, Indemnity Agreement, ¶ 1]. In other words, Developers Surety provided financial guarantees to mitigate Oconee County's risk exposure if Oconee Parkside failed to complete certain parts of the subdivision project on time or to the agreed-upon standards. In exchange, Defendants and the other indemnitors promised to reimburse Developers Surety for any losses it might sustain if it had to make good on those financial guarantees.

Defendants granted Surety Developers broad discretion in handling any claims on the bonds. In the event of any claims, Defendants gave Surety Developers the "right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed;" "the right to incur such expenses in handling a claim as it [deemed] necessary, including . . . expenses for investigative, accounting, engineering and legal services;" and "the right to reimbursement of its expenses and attorneys' fees incurred." [Doc. 24-3, Indemnity Agreement, ¶ 2]. Defendants agreed that an itemized statement of claims or losses paid or liabilities and expenses incurred, declared under penalty of perjury, "shall be prima facie evidence of the fact and extent" of Defendants' liability under the agreement. [*Id.* at ¶ 2.4].

Oconee County sent a demand letter to Surety Developers on October 4, 2007, declaring Ocean Parkside in default, alleging that Oconee Parkside had abandoned the project, and demanding performance under the bonds. [Doc. 24-3, Olson Decl., ¶ 10]; [Doc. 24-3, 2007 Demand, pp. 25–28]. Rather than paying out immediately and seeking indemnification from Defendants, Developers Surety executed continuation certificates to buy Oconee Parkside more time to perform the bonded work. [Doc. 24-3, Olson Decl., ¶ 12]; [Doc. 27, K. Beall Depo., p. 96:15]. While Oconee Parkside managed to build some streets, it never completed the subdivision and did not construct any houses, complete the sewer system, or build the pump station. [Doc. 27, K. Beall Depo., pp. 30:8-11, 16-20].

Plaintiff assumed responsibility for the bonds on May 31, 2019, and Developers Surety assigned to Plaintiff its interests arising under or relating to the Indemnity Agreement. [Doc. 24-3, Olson Decl., ¶ 9]. Oconee County sent a letter to Plaintiff on June 11, 2020, demanding the full penal sums of at least two of the bonds. [*Id.* at ¶ 15]; *see* [Doc. 24-3, 2020 Demand, pp. 29–31]. Plaintiff investigated the claims and concluded that Oconee Parkside indeed did not complete the bonded work. [Doc. 24-3, Olson Decl., ¶ 16]. Plaintiff negotiated and entered into a Settlement Agreement, in which it agreed to reimburse Oconee County for the cost of any bonded work that Oconee County performed within two years of the Settlement Agreement's effective date. [*Id.* at ¶ 17]; *see* [Doc. 24-3, Settlement Agreement, pp. 34–45].

Oconee County performed work covered by the sanitary sewer installation bond within two years of the Settlement Agreement's effective date and claimed reimbursement for the sanitary sewer bond's full penal sum of $400,000.00. [Olson Decl. at ¶ 18]. Plaintiff reviewed the request, investigated the claims, agreed that the amount was due, and paid $400,000.00 to resolve the claim. [*Id.* at ¶¶ 19–20]. Oconee County made no other requests for reimbursement under the other bonds, and the time for making such requests has now expired. [*Id.* at ¶ 21].

Plaintiff sent a letter to Defendants on January 12, 2023, notifying them of the payments made under the bonds and the expenses it incurred in investigating, defending, and settling the claim. [*Id.* at ¶ 22]. A month later, Plaintiff sent a second letter demanding indemnification under the Indemnity Agreement. [*Id.* at ¶ 23]. Plaintiff's incurred losses and expenses totaling $462,657.00 as a result of executing these bonds, defending claims on the bonds, and pursuing its rights under the Indemnity Agreement. [*Id.* at ¶ 25]; [Doc. 24-3, Loss Report, pp. 46–47].

Plaintiff filed this lawsuit on June 7, 2023, seeking indemnification. [Doc. 1]. Defendants filed an Answer [Doc. 9] on July 14, 2023, and the parties proceeded to discovery. *See* [Doc. 8]; [Doc. 10]; [Doc. 11]. Plaintiff filed its First Amended Complaint [Doc. 15] on October 5, 2023, and now, having completed discovery, Plaintiff moves for summary judgment. [Doc. 24]. After reviewing Plaintiff's Motion for Summary Judgment alongside Defendants' Response and Plaintiff's Reply, the Court granted

Defendants' request for leave to file a surreply, granted both parties leave to file

supplemental briefing sua sponte, and scheduled a hearing. [Doc. 34]; *see* [Doc. 29];

[Doc. 32]. Both parties filed supplemental briefs, and the Court heard the matter on

August 27, 2024. *See* [Doc. 35]; [Doc. 36].

## DISCUSSION

Before reaching the merits of Plaintiff's summary-judgment Motion, the Court

first sets out the law that will guide its analysis.

### A.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). As to issues for which the movant would bear the burden of

proof at trial, the "movant must affirmatively show the absence of a genuine issue of

material fact and support its motion with credible evidence demonstrating that no

reasonable jury could find for the non-moving party on all of the essential elements of

its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

As to issues for which the non-movant would bear the burden of proof at trial,

the movant may (1) simply point out an absence of evidence to support the non-moving

party's case or (2) provide "affirmative evidence demonstrating that the [non-movant]

will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in*

*Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)). If the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the [non-moving] party.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

In considering this Motion, "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Liberty Lobby*, 477 U.S. at 255. However, the Court need not draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011). "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001).

### B.    <u>Analysis</u>

No "genuine dispute as to any material fact" stands in the way of summary

judgment in this case, as discussed above, so the only issue before the Court is whether Plaintiff is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Plaintiff argues that Defendants must indemnify it for its losses under a valid and enforceable Indemnity Agreement and that Plaintiff has met its burden of proving its damages under the Indemnity Agreement's prima facie clause. [Doc. 24-1, pp. 8–14]. Defendants "do not disagree" that the Indemnity Agreement is valid and enforceable under Georgia law, and they acknowledge that the Indemnity Agreement contains a prima facie clause. [Doc. 29, p. 12 (citing [Doc. 24, pp. 8–10])]. However, Defendants argue that the Indemnity Agreement is inadmissible, that a jury should decide what weight to give to the document, and that Plaintiff and its predecessor-in-interest "engaged in conduct that can only have been undertaken in bad faith." [Doc. 29, pp. 12, 14–17]. To establish a breach of contract under Georgia law, Plaintiff must establish: (1) an enforceable agreement; (2) breach of that agreement; and (3) damages as a result of that breach. *Broughton v. Johnson*, 545 S.E.2d 370, 371 (Ga. Ct. App. 2001).

### 1.    Enforceable Agreement

The first question is whether Defendants entered into an enforceable agreement. *See id*. The key question here is whether Plaintiff may rely on its copy of the Indemnity Agreement in seeking summary judgment. *See* [Doc. 24-3, Indemnity Agreement, pp. 6–15]. The Court finds that it can do so because the Indemnity Agreement is not hearsay and is an admissible duplicate that has been sufficiently authenticated. *See* [Doc. 24-3,

pp. 6–15].

First, the Indemnity Agreement is not hearsay. *See* Fed. R. Evid. 803(c). Initially, the parties wrongly argued that the Indemnity Agreement is hearsay but disagreed over its admissibility. *See* [Doc. 29, pp. 9–10]; [Doc. 32, pp. 1–2]. Now, the parties acknowledge that the Indemnity Agreement is not hearsay because Plaintiff offered it to prove the legally operative fact that an agreement existed, and the Court agrees. [Doc. 35, pp. 2–4]; [Doc. 36, p. 4].

The rule against hearsay only applies to out-of-court oral, written, and nonverbal assertions "offer[ed] in evidence to prove the truth of the matter asserted." Fed. R. Evid. 802; 801(c). Thus, a contract is not hearsay when it is offered to prove the legally operative fact that an agreement existed. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994); Fed. R. Evid. 801, 802; Advisory Committee Note to the 1972 Proposed Rules ("The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion."); *see e.g.*, *Moody v. Coliseum Psychiatric Ctr., LLC*, No. 5:04-CV-364 (DF) 2006 WL 1652281, at *5–6 (M.D. Ga. June 12, 2006) (overruling a hearsay objection to a contract attached to a declaration because, among other things, the contract was "not hearsay"). Since the Indemnity Agreement is not hearsay, Plaintiff "need only authenticate it." *Kepner-Tregoe*, 12 F.3d at 540 (5th Cir. 1994).

Second, the Indemnity Agreement is an admissible duplicate. *See* Fed. R. Evid.

1003. While the best evidence rule generally requires admission of an original writing to prove its content, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity, or the circumstances make it unfair to admit the duplicate." *MKT Reps S.A. de C.V. v. Standard Chartered Bank Int'l (Ams.) Ltd.*, 520 F. App'x 951, 953 (11th Cir. 2013) (first citing Fed. R. Evid. 1002; and then citing Fed. R. Evid. 1003). A "duplicate" is defined as "a counterpart produced by a . . . process or technique that accurately reproduces the original." Fed. R. Evid. 1001(e). Here, it is undisputed that Plaintiff's copy of the Indemnity Agreement is a photocopy, and the Court finds that it qualifies as a duplicate under Federal Rule of Evidence 1001(e). *See* [Doc. 32, p. 4]; [Doc. 36, p. 7]; Fed. R. Evid. 104(a). "The burden of challenging admissibility of a photocopy rests with the party against whom it is offered." *United States v. Garmany*, 762 F.2d 929, 938 (11th Cir. 1985) (citing *United States v. Georgalis*, 631 F.2d 1199 (5th Cir. 1980)); *see Matter of Bobby Boggs, Inc.*, 819 F.2d 574, 582 (5th Cir. 1987).

In their Surreply, Defendants argue that Plaintiff's copy of the Indemnity Agreement is inadmissible because "Defendants have raised multiple bona fide questions as to the authenticity of the Indemnity Agreement." [Doc. 36, p. 6]. Their challenge fails for several reasons. Although Defendants claim that they "have never admitted" that the signatures on the Indemnity Agreement are theirs "and have raised significant concerns regarding its authenticity," they also have not denied that they

actually signed the Indemnity Agreement. [Doc. 36, p. 5]. In their depositions, both Defendants testified that the *only* reason they question the authenticity of their signatures is that they don't recall signing the Indemnity Agreement. [Doc. 27, K. Beall Depo, p. 53:10-11]; [Doc. 26, D. Beall Depo, p. 18:3-17]. Defendants' failure to recall lacks any "evidentiary root" and does not directly controvert Plaintiff's allegations, evidence, or the corresponding inference that an agreement existed. *See Reddick*, 2021 WL 5034836, at *6; *Hogan v. Pearson*, 380 S.E.2d 82, 83 (Ga. Ct. App. 1989) (holding that no genuine issue of fact regarding the formation of an agreement existed where the party opposing its enforcement merely stated that he did not remember signing the documents and did not believe he had signed them). Thus, Defendants' lack of memory is doesn't raise a genuine question regarding the Indemnity Agreement's authenticity.

Defendants also fail to demonstrate that the circumstances of this particular case "make it unfair to admit the duplicate" of the Indemnity Agreement. *See* Fed. R. Evid. 1003. Defendants assert that it would be "manifestly unfair for Plaintiff to attempt to enforce a photocopy of a twenty-year-old document that is not now—and never has been—in its possession and the original of which cannot be inspected and reviewed." [Doc. 36, p. 7]. But, that's exactly why lawyers make copies of signed important documents – in cases, like this, where the original might be lost. Moreover, Defendants don't explain how a document's age affects the fairness of its admissibility or why it would be unfair to enforce this contract against parties who don't deny its existence.

Their suggestion that a jury should determine the document's authenticity and enforceability lacks any sufficient legal basis, as there is no genuine question of fact here for a jury to decide. *See* [Doc. 36, p. 5]. Because Defendants raise no "genuine question" about the original Indemnity Agreement's authenticity and fail to demonstrate that "the circumstances make it unfair to admit the duplicate," Plaintiff's copy of the Indemnity Agreement "is admissible to the same extent as the original." *MKT Reps*, 520 F. App'x 951 at 953 (first citing Fed. R. Evid. 1002; and then citing Fed. R. Evid. 1003).

Third, Plaintiff has successfully authenticated the Indemnity Agreement under at least two of the methods outlined in Federal Rules of Evidence 901 and 902. Generally, "[t]o properly authenticate a document prior to its admission, 'a proponent [must] present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'" *MKT Reps*, 520 F. App'x at 953 (second alteration in original) (citation omitted); *see* Fed. R. Evid. 901. This burden is light, especially at summary judgment, requiring only some evidence that the document is what it purports to be. *See id.* at 954. Self-authenticating documents dispense with that burden entirely because they "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. An "acknowledged document" is self-authenticating under Federal Rule of Civil Procedure 902(8), and a document is "acknowledged" if it is "accompanied by a certificate of acknowledgement that is lawfully executed by a notary public." Fed. R. Evid. 902(8).

Here, the Indemnity Agreement bears Defendants' signatures and includes a notarized acknowledgement. *See* [Doc. 24-3, Indemnity Agreement, pp. 14–15]; Fed. R. Evid. 902(8). The "All-Purpose Acknowledgement," executed by notary public Kimberly McBrayer on May 16, 2005, identifies both Defendants by name, states that either she personally knew both Defendants or they presented satisfactory evidence to prove their identities, and states that both Defendants acknowledged to her that they executed the Indemnity Agreement. [*Id.* at p. 15]. This uncontroverted evidence clears the hurdle of Rule 902(8), establishing the authenticity of the Indemnity Agreement and the signatures it bears. *See* Fed. R. Evid. 902(8). Thus, the Indemnity Agreement qualifies as a self-authenticating acknowledged document. *Id.*

Even if the Indemnity Agreement were not self-authenticating under Federal Rule of Evidence 902(8), Plaintiff has met its light burden of authentication under Federal Rule of Evidence 901. *See MKT Reps*, 520 F. App'x at 953. Plaintiff's allegations, which Defendants do not deny, Mr. Olson's statement, and the notarization on the last page of the document show "that the document is what it purports to be," with no evidence in the record suggesting otherwise. *See id.* at 954. Thus, Plaintiff has also met its burden of authenticating the Indemnity Agreement under Federal Rule of Evidence 901.

To summarize, Plaintiff has successfully shown that its copy of the Indemnity Agreement qualifies as a duplicate and is admissible, supported by the notarization and

Mr. Olson's declaration. *See* [Doc. 24-3]. And Defendants have failed to provide any

evidence or raise a genuine question of fact regarding the authenticity of Plaintiff's copy

of the Indemnity Agreement. See Fed. R. Evid. 901, 902(8), 1003. Their arguments based

on the document's age and their inability to recall signing it do not meet the threshold

for excluding the document from evidence. *See Reddick*, 2021 WL 5034836, at *6. With no

concrete challenges to its authenticity, the Court finds that the Indemnity Agreement is

properly offered into evidence, and Plaintiff may rely on it in seeking summary

judgment.

Next, the Court finds that the Indemnity Agreement is enforceable. Georgia

courts "consistently [uphold] the validity and enforceability of indemnification

agreements in connection with the issuance of surety bonds." *Anderson v. U.S. Fidelity &*

*Guar. Co.*, 600 S.E.2d 712, 716 (Ga. Ct. App. 2004) (collecting cases). Defendants executed

the Indemnity Agreement as consideration for the issuance of bonds. [Doc. 24-3, Olson

Decl., ¶ 7]; [Doc. 24-3, Indemnity Agreement, ¶ 1]. They do not deny that they entered

into this agreement, and no evidence in the record suggests otherwise.

Now, Defendants assert a bad-faith defense, arguing that Plaintiff acted in bad

faith by continuing the bonds for 15 years and by failing "to pursue a defense to

payment on the bonds after Oconee County withdrew, then re-upped, the sewer credits

for Westland." [Doc. 29, pp. 14–16]. Generally, every contract governed by Georgia law

"imposes upon each party a duty of good faith and fair dealing." *Hunting Aircraft, Inc. v.*

*Peachtree City Airport Auth.*, 636 S.E.2d 139, 141 (Ga. Ct. App. 2006) (quoting *Brack v. Brownlee*, 273 S.E.2d 390 (Ga. 1980)). "This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performances. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." *Id.* (quoting *Camp v. Peetluk*, 585 S.E.2d 704, 708 (Ga. Ct. App. 2003)). However, when a contract expressly grants one party absolute or uncontrolled discretion in making a decision, then no duty of good faith is implied as to that decision. *Hunting Aircraft*, 636 S.E.2d at 142; *see Automatic Sprinkler Corp. of Am. v. Anderson*, 257 S.E.2d 283, 284 (Ga. 1979) (holding that where an employment contract provided that an award of direct incentive compensation was "directly within the discretion of the corporation," the employer was not required to exercise its discretion in good faith).

The Indemnity Agreement unambiguously grants Plaintiff "the right *in its sole and absolute discretion* to determine whether any claims under a Bond will be paid, compromised, defended, prosecuted or appealed." [Doc. 24-3, Indemnity Agreement, ¶ 2.1 (emphasis added)]. Even if Plaintiff owed Defendants a duty of good faith exercising those rights, Defendants' allegations fall far short establishing a bad-faith defense. *See Transamerica Ins. Co. v. H.V.A.C. Contractors, Inc.*, 857 F. Supp. 969, 974 (N.D. Ga. 1994); *Vickers v. Motte*, 137 S.E.2d 77, 80 (1964). But because the Indemnity Agreement expressly granted Plaintiff absolute discretion in exercising those rights, no duty of

good faith is implied as to that decision, and the Court will not revise the agreement under the guise of construing it. *See Hunting Aircraft*, 636 S.E.2d at 142. Thus, the Court finds that the Indemnity Agreement is enforceable.

### 2.    Breach

The next question is whether Defendants breached the Indemnity Agreement. *See Broughton*, 545 S.E.2d at 371. Summary judgment in favor of a surety is proper if the surety makes a prima facie showing of liability and the indemnitors fail to rebut the presumption of liability. *Id.* To determine whether Defendants breached their obligations under the Indemnity Agreement, the Court "appl[ies] the ordinary rules of contract construction." *Id.* However, "[n]o construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation. *Id.* (quoting *Nguyen v. Lumbermens Mut. Cas. Co.*, 583 S.E.2d 220, 223 (Ga. Ct. App. 2003)).

The indemnification provision requires Defendants to indemnify Plaintiff from "all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, sustained or incurred "by reason of or in consequence of the execution and delivery by [Plaintiff] of any Bond on behalf of [Oconee Parkside]." [Doc. 24-3, Indemnity Agreement, ¶ 1]. Plaintiff's rights under the agreement include (1) "the right in its sole and absolute discretion to determine whether any claims under a Bond shall be paid, compromised, defended, prosecuted or appealed;" (2) "the right to incur

such expenses in handling a claim as it [deemed] necessary, including . . . expenses for investigative, accounting, engineering and legal services;" and (3) "the right to reimbursement of its expenses and attorneys' fees incurred." [*Id.* at ¶¶ 2.1, 2.2, 2.5]. The Court finds this language unambiguous and therefore it must be strictly enforced. *See U.S. Fidelity*, 600 S.E. 2d at 713–14 (affirming summary judgment for a surety based on similar language in an indemnity agreement).

It is undisputed that Plaintiff incurred losses on the bonds it issued to Oconee Parkside. As previously discussed, Plaintiff received claims for the full penal sums of at least two of Oconee Parkside's bonds and negotiated with Oconee County to settle those claims on more favorable terms. [Doc. 24-3, Olson Decl., ¶ 15, 17]; *see* [Doc. 24-3, 2020 Demand, pp. 29–31]; [Doc. 24-3, Settlement Agreement, pp. 34–45]. In the end, Plaintiff paid Oconee County the penal sum of only one of the bonds. [Doc. 24-3, Olson Decl., ¶ 18–20].

Defendants breached the Indemnity Agreement by not fulfilling their contractual duty to indemnify Plaintiff for its losses. Plaintiff sent two letters to Defendants informing them of their liability and demanding indemnification. [Doc. 24-3, Olson Decl., ¶ 22–23]. To date, Defendants have not indemnified Plaintiff for its losses and thus have breached the Indemnity Agreement.

### 3.    Damages

The final question is whether Plaintiff has met its burden of showing that it

sustained damages. *See Broughton*, 545 S.E.2d at 371. The Indemnity Agreement includes

a "prima facie" clause, which provides that "an itemized statement of claims or losses

paid or liabilities and expenses incurred, declared under penalty of perjury . . . shall be

prima facie evidence of the fact and extent of liability hereunder of Principal and

Indemnitors." [*Id.* at ¶ 2.4]. This clause is enforceable under Georgia law. *See U.S.*

*Fidelity*, 600 S.E.2d at 716.

Plaintiff provided a Loss Report, attached as Exhibit F to Mr. Olson's

Declaration, that itemizes Plaintiff's losses and expenses incurred to date. *See* [Doc. 24-3,

Loss Report, pp. 46–47]. The Loss Report meets the requirements of the prima facie

clause, so it establishes a presumption of Defendants' liability in the amount of

$462,657.00. [*Id.*]. Because Defendants offer nothing to rebut that presumption of

liability, the Court finds that Plaintiff has met its burden of proving damages under the

"prima facie" clause. *See* [*Id.*]; [Doc. 24-3, Indemnity Agreement, ¶ 2.4]; *U.S. Fidelity*, 600

S.E.2d at 716.

## CONCLUSION

Accordingly, because no "genuine dispute as to a[] material fact" exists in this

case, and because no evidence rebuts Plaintiff's prima facie case of liability, the Court

**GRANTS** Ohio Casualty's Motion for Summary Judgment [Doc. 24]. *See* Fed. R. Civ. P.

56(a). The Clerk shall enter **JUDGMENT** in favor of Plaintiff and against Defendants,

jointly and severally, in the amount of $462,657.00, with all costs taxed against the

Defendants and mark this case closed.

**SO ORDERED** this 29th day of August, 2024.

S/ Tilman E. Self, III

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**